UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GENE COBURN,<br>　　　　Plaintiff<br>v.<br><br>CITY OF MANCHESTER<br>　　　　Defendant | )<br>)<br>)<br>)　Jury Trial Demanded<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

　　　　NOW COMES the Plaintiff, Gene Coburn, by and through his attorneys, Backus, Meyer & Branch, LLP, and respectfully submits the following Complaint for violation of the Fair Labor Standards Act, stating as follows:

**I.　　Parties**

　　　　1.　　The plaintiff, Gene Coburn, is a former employee of the defendant. Mr. Coburn resides in Concord, New Hampshire.

　　　　2.　　The defendant, City of Manchester [Manchester], is a political subdivision of New Hampshire with a principal office at One City Hall Plaza, Manchester, New Hampshire.

**II.　　Jurisdiction and Venue**

　　　　3.　　This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. §216(b).

　　　　4.　　The Court may exercise personal jurisdiction over the defendant as the defendant's principal office is in New Hampshire.

　　　　5.　　This Court is the proper venue for this matter pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the plaintiff's claims occurred in New Hampshire.

1

6. This Court has supplemental jurisdiction over the plaintiff's state law claim under 28 U.S.C. §1367 as it forms a part of the same case or controversy as the plaintiff's federal claim.

### III. Facts

#### A. Fair Labor Standards Act Coverage

7. The Fair Labor Standards Act [FLSA] mandates that no employer may employ any employee in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207 (a)(1).

8. "Employer" includes "a public agency" under the FLSA, and "public agency" means the government of a political subdivision of a state. 29 U.S.C § 203 (d) and (x).

9. "Enterprise engaged in commerce or in the production of goods for commerce" is defined under the FLSA to mean any enterprise that is an activity of a public agency or a city government. 29 U.S.C. § 203(s) (1)(c).

10. Beginning in 1988, Manchester employed Gene Coburn in its Department of Public Works Highway Department, Engineering Division.

11. Manchester's Engineering Division oversees the design, installation, and maintenance of Manchester infrastructure, including traffic signals and street lights, streets and sidewalks, and catch basins and pipes.

12. The Division also issues permits to developers for work that affects the City's right-of-way areas.

13. Manchester was therefore an employer covered by the FLSA, and its, employee, Gene Coburn, was entitled to pay for his hours employed over forty in a workweek at the rate of at least one and one-half times his regular hourly rate of pay.

**B.     Mr. Coburn's Job Title and Rate of Pay**

14.     Mr. Coburn was an excellent employee who was promoted several times.

15.     In 2012, Mr. Coburn was promoted to the position of Utility Inspector II, which was an hourly-paid position.

16.     As of February 2022, Mr. Coburn remained a Utility Inspector II with an hourly pay rate of $38.51.

17.     Mr. Coburn's pay rate changed sometime in 2022 to $40.26 an hour.

18.     On January 26, 2023, Mr. Coburn's hourly rate was increased to $41.46 an hour.

19.     Mr. Coburn retired on or about August 1, 2024.

20.     Due to pay raises between January 26, 2023 and August 1, 2024. Mr. Coburn's hourly pay rate exceeded $41.46 at the time of his retirement.

**C.     Mr. Coburn's Job Duties and Pay Received**

21.     Mr. Coburn's job duties as a Utility Inspector II included "inspect[ing] private construction projects, including excavations, construction, repair and maintenance in roads, sewers, drainage areas, water systems, and electrical operations" and "provid[ing] direction to private contractors, engineers and related construction entities in reviewing plans and specifications and field site locations."

22.     These duties were performed from 8AM to 4PM, Monday through Friday, or during a standard 40-hour workweek.

23.     Mr. Coburn was additionally required to be "on call" <u>for all other hours</u> every other workweek.

24.     Mr. Coburn was on call for the purpose of responding to construction, drainage, road, sewer, water, gas, and electrical emergencies as they arose within the Manchester city limits.

25. In the event of a call, Mr. Coburn was to report to the site of the emergency as soon as possible to manage the emergency and to direct and support repairs.

26. Mr. Coburn was one of only two Utility Inspector II employees who held these responsibilities for on-call status and emergency response as a requirement of employment.

27. Mr. Coburn and the other employee alternated on-call responsibility such that Mr. Coburn would be on-call from 8AM Monday through 8AM the following Monday. His counterpart would then take up on-call responsibility until the following Monday at 8AM when Mr. Coburn would resume his on-call duty.

28. Where there are 24 hours in a day and 168 hours in a week, this meant that each employee held employment-related responsibility for Manchester, for a straight 168 hours every other week of the year.

29. For each of his workweeks from February 14, 2022 to August 1, 2024, Mr. Coburn was paid at his regular rate of pay for his approximate forty hours worked 8AM to 4PM.

30. For each work week between February 14, 2022 and August 1, 2024, Mr. Coburn was paid at a rate of one and one-half his regular hourly rate of pay for any hours over these forty that he spent responding to Manchester emergencies or doing related emergency work.

31. Mr. Coburn was <u>not</u>, however, paid any amount for the up to 128 hours that he was *on-call* and obligated to Manchester for every other work week from February 14, 2022 to August 1, 2024.

**D.** **On-Call Time is Compensable If it Predominantly Benefits the Employer**

32. On-call time or "waiting time" may be hours worked under the FLSA. 29 CFR § 785.14.

33. Whether hours spent on-call are hours compensable under the FLSA is a question of fact to be decided on a case-by-case basis. <u>Id.</u>

4

34. The question turns on whether the employee is unable to use the on-call time effectively for his own purposes because the time is effectively controlled by the employer. 29 C.F.R § 785.15.

35. In interpreting the FLSA, courts recognize that an employee "refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity." Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).

36. Courts further recognize that "readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." Id.

37. If on-call time may be deemed to be predominantly for the employer's benefit, as opposed to the employee's, the time is compensable and must be paid the employee according to the provisions of the FLSA.

38. The First Circuit has applied this predominant benefit test. See Montoya v. CRST Expedited, Inc., 88 F.4th 309, 316 (1st Cir. 2023).

39. The question of whether the employer versus the employee is predominantly benefitted by the employee's time spent on call is a question dependent upon all the circumstances of the case. Skidmore v. Swift, 323 U.S. 134 (1944).

E. **Mr. Coburn's On-Call Time Predominantly Benefitted Manchester**

40. Courts have identified factors for determining whether the employer is predominantly benefitted during an employee's on-call time. See e.g. Largent v. E. Alabama Water, Sewer & Fire Prot. Dist., 330 F. Supp. 2d 1252, 1261–62 (M.D. Ala. 2004)(citing factors including whether there were geographical restrictions on the employees' movements while on call; whether a time limit for response was restrictive; whether the employee could easily trade on-call responsibilities; whether the call frequency was unduly restrictive; whether employees actually

engaged in personal activities while on call; whether the response was mandatory; and the nature of the employment and its relationship to waiting time).

41. Applying these factors to the circumstances of Mr. Coburn's on-call time, Manchester was predominantly benefitted during Mr. Coburn's on-call time.

42. First, due to the nature of Mr. Coburn's call responsibility, the time limit for his response was quite restrictive.

43. Mr. Coburn's call work was in emergency management of water, gas, and electrical utilities.

44. He was charged with responding to natural and accidental emergencies having the potential to damage the city's utility infrastructure and create safety hazards.

45. On scene, Mr. Coburn was responsible for determining the extent of damage and for coordinating repairs immediately.

46. Delay in responding to perform these functions would foreseeably result in damage to utilities and risk health, welfare, and safety on Manchester's roadways and in homes, schools, businesses, healthcare facilities, and emergency units dependent upon utilities for operations.

47. Because of the immediate response time required, Mr. Coburn could not travel, geographically, from Manchester city limits for 26 workweeks out of his work year without jeopardizing his employment.

48. Second, immediate response time was an essential function of Ms. Coburn's on-call duty such that he would be disciplined if he failed to respond promptly.

49. Mr. Coburn was disciplined on two occasions when he failed to promptly respond to an emergency call.

50. On penalty of discipline, Mr. Coburn could not and did not travel to pursue his hobbies, for example, of hiking outside Manchester city limits or sailing his sailboat in Maine.

51. Third, Mr. Coburn was actually called in to perform his inspection and remediation duties fairly frequently, or an estimated average of ten times per year.

52. Moreover, many of these calls were for major utility crises requiring Mr. Coburn to work long hours, including as many as 100 in a workweek.

53. Thus, the proven possibility of receiving a call to work, for a long period of time, interfered with Mr. Coburn's ability to plan to pursue personal and family activities during his on-call hours.

54. Fourth, Mr. Coburn had but one utility-inspector counterpart, making it difficult for him to "trade" on-call shifts to gain free time.

55. "Trading off" with just one other employee meant saddling that employee with two burdened weeks in a row and thereafter undertaking two burdened weeks himself to maintain the alternating schedule.

56. Because of the difficulty presented by "trading," Mr. Coburn and his counterpart rarely switched on-call weeks.

57. In 2024, Mr. Coburn's counterpart offered to undertake several on-call weeks for him.

58. Mr. Coburn's supervisor overruled the offer stating that the coverage burden would be "too much" for Mr. Coburn's counterpart to undertake.

**F.    Manchester Disregarded the FLSA When it Failed to Pay Mr. Coburn for his On-Call Overtime Hours**

59. Manchester Department of Public Works knew of FLSA requirements for pay for on-call time. The Department paid *other* employees for on-call time, for emergency-response work, but, without explanation, did not pay Mr. Coburn and his Utility Inspector counterpart for their on-call time.

60. Mr. Coburn was <u>not</u> a party to any agreement with his employer relating to his on-call work and pay (or lack thereof).

61. To the contrary, Mr. Coburn repeatedly inquired of his supervisor and upper Departmental management as to why he was not paid for his on-call work while others in the Department of Public Works were paid for their on-call work.

62. Mr. Coburn's supervisor responded only that the lack of pay was a part of his position and that he was free to find employment elsewhere if he did not find his pay terms acceptable.

**G.  Manchester Owes Mr. Coburn Back Pay for His On-Call Hours from February 14, 2022 to August 1, 2025**

63. An action for unpaid overtime wages may be commenced within two years after the date when the wages were due, except that a cause of action arising out of a willful violation may be commenced within three years after the wages were due to paid. 29 U.S.C. § 255(a).

64. "Willful violation" occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." See <u>McLaughlin v. Richland Shoe Co.</u>, 486 US 128 (1988).

65. Evidence of an employer's payment of overtime pay in accordance with the requirements of the FLSA demonstrates "knowledge or reckless disregard" for the purpose of determining willful violation of the FLSA when the employer later fails to pay. See <u>Reich v. Newspapers of New England, Inc.</u> 44 F.3d 1060 (1st. Cir. 1995).

66. In Mr. Coburn's case, he repeatedly raised with Department management the issue of him not being paid for his on-call time while others similarly-situated were being paid, and his concerns were disregarded and rejected without explanation, supporting a finding of willfulness.

67. From February 14, 2022 to August 1, 2024, there are 128 workweeks such that Mr. Coburn was on-call for approximately half of these, or approximately sixty-four weeks.

8

68. Manchester owes Mr. Coburn pay for all of his on-call hours when he was not engaged in emergency response activity during these approximate sixty-four weeks.

69. To the extent any of these on-call hours were under the FLSA cap of forty in a workweek, Mr. Coburn must be paid for these hours at his regular pay rate of at least $38.51.

70. These funds are owing pursuant to RSA 275:43, I, requiring regular hourly wages be paid to employees.

71. To the extent Mr. Coburn's on-call hours during this approximate sixty-four week period occurred *over* the FLSA cap of forty in a workweek, Mr. Coburn must be paid for these hours at a pay rate of one and one-half times his regular hourly pay rate, or at least $57.77.

72. By way of example, if Mr. Coburn worked forty hours from 8AM to 4PM, Monday February 14, 2022 to Friday February 18, 2022, and also was on-call and engaged to wait for emergency response for the 128 additional hours in that workweek, Mr. Coburn would be owed at least $7,394.56 for that workweek. (resulting from 128 hours times $57.77).

**H.    Manchester Owes Mr. Coburn an Additional Amount Equal to the Amount it Owes Mr. Coburn for his Unpaid, On-Call Hours in Workweeks from February 14, 2022 to August 1, 2025**

73. Both the FLSA and New Hampshire law permit a plaintiff to recover liquidated damages in an amount equal to his unpaid wages. 29 U.S.C. §216(b); RSA § 275:44, IV. See also Chen v. C & R Rock Inc., No. 14-CV-114-AJ, 2016 WL 1117416, at *7 (D.N.H. Mar. 22, 2016).

74. There is a presumption that liquidated damages will be awarded where the FLSA provides there "shall be liable to the employee ... in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... an addition equal amount as liquidated damages." Id. (citing 29 U.S.C. § 216(b)).

75. Discretion may be exercised in awarding liquidated damages only "if the employer shows ... that the act of omission giving rise to such action was in good faith and that he had

9

reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." Id. (citing 29 U.S.C. § 260).

76. "To demonstrate good faith, the employer must adduce substantial evidence showing an honest attempt to determine the requirements of the FLSA and to comply with them." Id.

77. Yet, a showing that the employer "did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith." Id.

78. Where Mr. Coburn repeatedly raised the issue of not being paid for his on-call hours, and his concerns were dismissed without apparent inquiry by his Department's management as to the legitimacy of his concerns, it is unlikely that Manchester will sustain its burden of showing an honest attempt to determine if it owed Mr. Coburn for his on-call time.

## COUNT I –for Violation of FLSA 29 U.S.C. § 207 (a)(1)

79. The allegations in the above and below paragraphs are re-alleged and incorporated herein.

80. Manchester is subject to the requirements of the FLSA as it is a public agency, "enterprise engaged in commerce" within the meaning of the statute. 29 U.S.C. § 203 (s)(1)(c).

81. Mr. Coburn was employed by Manchester, from February 14, 2022 to August 1, 2025, and was entitled to "enjoy the protections of the FLSA's overtime pay requirements." See Martinez v. Petrenko, 792 F.3d 173, 175 (1st Cir. 2015).

82. 29 U.S.C. § 207 (a)(1) of the FLSA makes it unlawful for an employer to fail to pay its employee "less than one and one-half times the regular rate at which he is employed" for hours worked in a workweek over forty.

83. To state a valid FLSA claim, a plaintiff must allege only: (1) that he was employed by the defendant; (2) that he was employed by an enterprise engaged in commerce within the meaning

of the FLSA; and (3) that he performed work for which he was under-compensated.  Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012).

84. As detailed in this complaint, from February 14, 2022 to August 1, 2024, Mr. Coburn expended compensable, on-call hours for the predominant benefit of Manchester, in excess of forty workhours in his workweeks, making him eligible for overtime pay under the FLSA.

85. As detailed in this complaint, Mr. Coburn was not paid for these on-call hours expended for the predominant benefit of Manchester in accordance with the requirements of the FLSA.

86. Manchester further failed to pay with knowledge of the FLSA and with reckless disregard for its obligation to pay overtime wages, such that the failure to pay was willful.

87. Due the willful violation of the FLSA, Mr. Coburn is entitled to avail of the three-year statute of limitations under the statute.  See 29 U.S.C. § 255(a).

88. Due to the willful violation of the FLSA, Mr. Coburn is further entitled to liquidated damages in an amount equal to his calculated overtime wages owed.  See 29 U.S.C. § 216(b).

**COUNT II – for Violation of RSA 275:43, I**

89. The allegations in the above and below paragraphs are re-alleged and incorporated herein.

90. RSA 275:43, I states that "every employer shall pay all wages due to employees."

91. "Wages," per 275:42, III are "compensation …for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation."

92. Mr. Coburn provided the service of being engaged to wait to respond to a natural or accidental water, electrical, or gas emergency during his on-call hours from February 14, 2022 to August 1, 2024.

11

93. In violation of state wage law, Manchester failed to pay Mr. Coburn his wages due for providing this service at personal expense to him.

94. Liquidated damages in an amount equal to Mr. Coburn's wages due should be awarded where Manchester: had the financial ability to pay for on-call time; paid other employees for their on-call hours and therefore knew the hours were compensable; but nevertheless failed to pay for on-call time in Mr. Coburn's case.  See Ives v. Manchester Subaru, Inc., 126 N.H. 796, 801, 498 A.2d 297, 301 (1985).

WHEREFORE Gene Coburn respectfully requests that this honorable court:

A) Schedule this matter for trial by Jury;

B) Find that the Defendant is liable for violations of the FLSA;

C) Award the Plaintiff his wage losses;

D) Award the Plaintiff interest;

E) Award the Plaintiff liquidated damages;

F) Award the Plaintiff his attorney's fees; and

G) Award such other relief as the Court deems just, equitable or proper.

Dated:  February 14, 2025        Respectfully submitted,

                                 Gene Coburn

                                 By his attorneys

                                 BACKUS, MEYER & BRANCH, LLP

                                 /s/ Megan E. Douglass
                                 Megan E. Douglass, NH Bar #19501
                                 116 Lowell Street
                                 Manchester, NH 03104
                                 (603) 668-7272
                                 mdouglass@backusmeyer.com