UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Gene Coburn,

v.

Civil No. 25-cv-71-JL-TSM
Opinion No. 2026 DNH 127

City of Manchester, NH

**MEMORANDUM ORDER**

The summary judgement motion in this Fair Labor Standards Act litigation involves the question of whether "on-call" time is compensable under the Act's definition of "work." 29 U.S.C. §§ 206-07. Plaintiff Gene Coburn, a retired utilities inspector for the defendant City of Manchester, seeks payment under the FLSA and state law for time he spent "on-call" waiting to respond to emergencies. The city moves for summary judgment on the basis that his on-call time is not compensable as such "work."

This court has jurisdiction under 28 U.S.C. § 1331 (federal question). After reviewing the parties' submissions and hearing oral argument, the court grants the city's motion for summary judgment. The undisputed record facts establish, as a matter of law, that because Coburn could, and did, engage in a range of personal activities while on call, Coburn's on-call time, though restricted, was not spent "predominantly for [his] employer's benefit," and is therefore not compensable under the FLSA. *See Montoya v. CRST Expedited, Inc.*, 88 F.4th 309, 316 (1st Cir. 2023).

## I. Applicable legal standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.' " *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) (quoting *Perez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 25 (1st Cir. 2011). "The court must view the facts in the light most favorable to the non-moving party ...." *Carlson v. Univ. of New Eng.*, 899 F.3d 36, 43 (1st Cir. 2018). While the Court must draw reasonable inferences in favor of the non-moving party, that party still must "produce specific facts sufficient to deflect the swing of the summary judgment scythe." *Tang*, 821 F.3d at 215 (internal quotations and citations omitted). "If the non-moving party fails to make such a showing, then summary judgment is appropriate." *Borges v. Serrano-Isern,* 605 F.3d 1, 5 (1st Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## II. Background

From 1988 until he retired on August 1, 2024, Coburn worked for the City of Manchester.[1] At the time of his retirement, he had been a Utility Inspector II with the city's Highway Division for 15 or 16 years,[2] with an "on call" status requirement.[3] A Utility Inspector II receives and responds to calls from dispatch in the event of a utility-

---

[1] Am. Compl. (doc. no. 4) at 2-3; Answer (doc. no. 6) at 2-3; Coburn Dep. (doc. no. 25-3) at 9.

[2] Coburn Dep. (doc. no. 25-3) at 9.

[3] *Id*. at 20; Utility Inspector II Job Announcement dated April 12, 2012 (doc. no. 25-4).

related emergency that occurs outside the typical Monday through Friday, 8 a.m. to 4 p.m. workday.[4] Each emergency call requires the inspector to respond as quickly as possible to the site of an emergency gas or water leak. The inspector monitors repair work performed by private contractors on public rights of way.[5] Typically, the work could last from eight hours to several days.[6]

Coburn shared on-call duties with one colleague. Because one of them was required to be on call at any given time, Coburn spent 26 weeks per year on call, including weekends. Emergency call frequency varied seasonally.[7] In winter months calls could come in daily, while in summer inspectors could go weeks without getting an emergency call.[8] Most disruptive to Coburn was that each call required him to leave his home for hours and sometimes the work would extend to several days on end.[9] While waiting, Coburn felt he could not do anything that could not be immediately concluded if a call arrived.[10] He stayed close to where he lived in Concord, or where he worked in Manchester. He felt like he could frequent only restaurants serving fast food, could not engage in activities like hiking or attending family gathering unless he could depart in haste, and had traveled in a separate vehicle from his wife. [11] He nevertheless engaged in

---

[4] Coburn Dep. (doc. no. 25-3) at 125-26.
[5] Meisel Dep. (doc. no. 32-3) at 32-34.
[6] Coburn Aff. (doc. no. 27-4) at 1.
[7] Coburn Dep. (doc. no. 27-14) at 92.
[8] *Id.*; Mem. Mot. Summ. J. (doc. no. 25-1) at 11 n. 1.
[9] Coburn Aff. (doc. no. 27-4) at 1.
[10] *Id.*
[11] Coburn Dep. (doc. no. 25-3) at 112, 115.

activities around his home like walking the dog and yard work, and attended family gatherings while on call.[12]

Coburn received all wages for his typical working hours, *i.e.,* his 40-hour work weeks, and overtime for hours over 40 when he responded to emergencies. The only wages at issue in this case are those for on-call hours.

Although Coburn was not a union member, his position fell under a collective bargaining agreement between the city and a municipal employee union.[13] The operative collective bargaining agreement provided, *inter alia*, that Manchester pay covered employees' overtime if they worked more than eight hours per day or 40 hours per week, a minimum of three hours pay if an employee left work and was recalled to work, and $40 per day for each 24-hour period when employees holding certain positions were on "standby."[14] The agreement in place during Coburn's tenure did not provide for "standby" pay for utility inspectors.[15]

Coburn raised the issue of on-call pay with his supervisors,[16] but the city did not change its policy to compensate him for the time he spent on call. He stayed in his position despite never receiving on-call pay in order to protect his seniority, eventually retiring on August 1, 2024. Under the new collective bargaining agreement, implemented

---

[12] *Id.* at 110-11; *see also* Coburn Dep. (doc. no. 27-20) at 121.

[13] Coburn agrees the collective bargaining agreement covered his position as a utilities inspector. Pl.'s Answer to Def.'s Statement of Facts (doc. no. 27-2) at 1-2.

[14] Collective Bargaining Agm't (doc. no. 25-5) at 15-16, 19-21; Deposition of John Meisel (doc. no. 25-6) at 58-59:8-1, 60:1-5.

[15] Pl.'s Answer to Def.'s Statement of Facts (doc. no. 27-2) at 2.

[16] The city disputes this fact. It claims that, for instance, he never brought a grievance or complained in writing. Resp. Add'l Statement Facts (doc. no. 29-1) at 5.

after Coburn retired, utility inspectors receive "standby" pay of $45 per day. Coburn brought suit against the city in 2025, claiming back-pay for the time he spent on call, under the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), and N.H. RSA 275:43, I.

## III. Analysis

The FLSA "requires employers to compensate employees for each hour of work." *Montoya v. CRST Expedited, Inc.*, 88 F.4th 309, 315 (1st Cir. 2023) (citing 29 U.S.C. § 206(a)). Under some circumstances, this includes waiting to be called to work; "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). "An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17. In on-call or waiting cases, "the critical question is whether an employee is 'engaged to wait' (which is generally compensable) or 'wait[ing] to be engaged' (which is noncompensable)." *Montoya*, 88 F.4th at 316 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944)). There is no "legal formula" to determine whether the time spent waiting on call is compensable as working time under the FLSA. *Skidmore*, 323 U.S. at 136. "Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court." *Id.* at 136–37.

To determine whether an employee's time is spent in "engaging to wait" and therefore compensable under the FLSA, the First Circuit Court of Appeals, like other federal appellate courts, applies the "predominant benefit test." Under this test

"employee time is compensable work when [the] 'time is spent predominantly for the employer's benefit,' which 'is a question dependent upon all the circumstances of the case,'" *id.* (quoting *Armour & Co.*, 323 U.S. at 133), including "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time." 29 C.F.R. § 785.14. Some restriction of the employee's activities during on-call time does not render the time compensable under the FLSA. "To survive a motion for summary judgement," "the employees must show that the on-call policy imposes [] burdens that seriously interfere with their ability to use the time for personal pursuits." *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 611 (6th Cir.1992).

The city argues, and Coburn does not contest, that he was subject to the collective bargaining agreement covering utility inspectors. Nor does he contest that the collective bargaining agreement did not provide for payment for on-call waiting time for his position. The main disputes between the parties center on the compensability of Coburn's on-call time under FLSA 29 U.S.C. §207(A)(1), and whether there was a constructive agreement between the parties regarding on-call pay. The parties agree that the determinations are fact-specific. Based on this record, the court grants summary judgment for the defendant. Even construing all disputed facts and making all inferences in Coburn's favor, no reasonable jury could find that Coburn's on-call time was used predominantly for the city's benefit and therefore compensable under the FLSA.[17]

---

[17] The city argues that, because the state adopted 29 C.F.R. § 785 into RSA 275:43 for the purpose of determining what constituted working time, Coburn's claims under N.H. RSA 275:43

**a. Compensability under FLSA**

The city argues that Coburn's time on call was not compensable because he did not spend it primarily for his employer's benefit. The inquiry is fact-specific. While courts have considered numerous factors in determining whether on-call time was primarily for the employer's benefit, the *Montoya* court found that the "predominant benefit test" includes the employee's physical location and ability to leave the workplace, and the ability to engage in personal activities during the time. 88 F.4th at 316-17. Recognizing that the First Circuit Court of Appeals has not articulated a more specific test for on-call time, Manchester argues that Coburn's on-call time would not be compensable under factors identified in other circuits, including "whether the employee may carry a beeper or leave home; []the frequency of calls and the nature of the employer's demands; []the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and []whether the employee actually engaged in personal activities during on-call time." *Ingram v. Cnty. of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998). The Ninth Circuit Court of Appeals also identified factors including "whether there was an on-premises living requirement; []whether there were excessive geographical restrictions on employee's movements;" and "whether a fixed time limit for response was unduly

---

fail for the same reasons his claims fail under the FLSA. Mem. Mot. Summ. J. (doc. no. 25-1) at 19 (citing *Gruda v. Fred H. Hamblet, Inc.*, No. 11-CV-053-JD, 2011 WL 2412958 at *2 (D.N.H. Jun. 14, 2011)). Coburn does not contest and therefore waives his opposition to Manchester's argument that his state claim should fail for the same reasons his federal claim fails. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Pickering v. Citizens Bank, N.A.*, 2019 WL 3457602, at *4 (D.N.H. July 31, 2019) (DiClerico, J.) ("[A] court is not obligated to make arguments on behalf of a party, particularly a party represented by counsel, and may disregard arguments that are not developed.").

restrictive." *Owens v. Loc. No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 351 (9th Cir. 1992), *as amended* (Aug. 18, 1992). The record evidence does not show that Coburn's time spent on-call "predominantly" redounded in his employer's benefit under any of the factors examined by any court of appeals. *See Montoya*, 88 F.4th at 316.

First, Coburn was not subject to burdensome geographical restrictions,[18] an unduly restrictive response time limit, or an on-premises living requirement. Unlike the employees in cases in which the employees' on-call time was compensable, he was able to go anywhere with cell phone coverage so long as he could respond in a "reasonable" time. *Cf, e.g. id*. at 319-20 (on call time compensable where truck drivers had to remain in truck's sleeper berth during off-duty time, though able to sleep, watch television, and prepare meals for themselves); *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1537-38 (10th Cir. 1991) (firefighters required to report to a callback within twenty minutes, and to answer each callback or be subject to discipline). Although Coburn was once reprimanded for not answering a call when he was out of cell phone range, there is no evidence that the reprimand had any effect on his pay or career, *see Martin*, 968 F.2d at 608 (although disciplined, no employee ever discharged for failure to report when called), and Coburn does not argue that the city imposed a specific response time on him, only that he was required to respond "prompt[ly]" or "as soon as possible."[19] It is undisputed that the city never gave Coburn a limit on his response time, or reprimanded him for

---

[18] See Coburn Dep. (doc. no. 25-3) at 109.

[19] Obj. to Mot. Summ. J. (doc. no. 27-1) at 4; Answer to Def's Statement Facts (doc. no. 27-2) at 5; Winslow Dep. (doc. no. 25-8) at 40.

taking too long to respond to a call. As Coburn said, "the response time itself was never something that was ever discussed."[20]

Coburn argues he was unable to engage in the types of pursuits he loves—hiking, sailing, bicycling—because he had to remain within range of cell phone service and able to get to Manchester within a "reasonable" amount of time. He points to *Cross v. Arkansas Forestry Comm'n*, in which the court found the employee firefighters' time compensable under the FLSA in part because they were restricted in the distance they could travel from home, and were limited in the types of recreational activities they could engage in because they had to be ready to fight fires at any moment. 938 F.2d 912, 916-17 (8th Cir. 1991). Like Coburn, the firefighters were unlikely to engage in activities that cost money because of the possibility that they would have to leave to respond to an emergency call. *Id.* at 917. But significantly, and unlike Coburn, the firefighters in *Cross* were required to monitor their radio transmissions "continuously," which meant that they could not "participate in activities that would prevent them from hearing transmissions, such as musical events, sporting events or similar activities," and even restricted their activities in in their own homes, affecting their ability to entertain, attend social gatherings, read, or watch television. *Id.* Coburn points to no similar evidence of an on-call restriction so onerous that he could not engage in normal activities while at home; rather, on-call status required Coburn only to stop what he was doing when he received a call on his cell phone. For example, he stated at deposition that while he subjectively felt

[20] Coburn Dep. (doc. no. 25-3) at 106.

he could not go to certain restaurants because he may be called away, he was able to attend social gatherings at family members' houses and engage in normal activities like walking the dog or yard work so long as he stayed within the Concord area where he lived (or by necessary implication, within a reasonable similar distance from Manchester).[21]

The court does not find Coburn's subjective feeling that he was not able to go to sit-down restaurants or movies reasonable; many workarounds, like occasionally taking food to go or driving separately from his wife, seem to have been available to him. And though the policy may still have circumscribed his activities, "the fact that some of the plaintiff['s] activities have been affected by the policy is not sufficient to make the on-call time compensable." *Martin*, 968 F.2d at 611. Courts have found that even when the activities an employee can engage in do not "represent the full range of activities in which [they] would like to engage," the fact that the employees were able to "engage in numerous personal activities while on-call…weighs in favor of finding the time non-compensable." *See Ingram*, 144 F.3d at 269-70 (employees able to engage in activities such as reading, watching television, doing housework, shopping, gardening and playing with their children); *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 373–75 (5th Cir.1987) (on-call time not compensable because employees, who were required to remain at home while on call, were able to trade their on-call responsibilities, the alarms were infrequent, and on-call duty usually did not interfere with all the normal activities in

[21] Coburn Dep. (doc. no. 27-18) at 115; (doc. no. 27-20) at 121.

and around the home like eating, sleeping, entertaining guests and watching television); *Birdwell v. City of Gadsden*, 970 F.2d 802, 808-10 (11th Cir. 1992) (on-call police officers who could remain at home or travel, while required to carry a beeper, were not entitled to compensation, as the employees "could do anything they normally did so long as they were able to respond to a call promptly" and the time was therefore "not used predominantly for the employer's benefit.").[22]

Second, although Coburn's on-call schedule may not have been "flexible" because he was required to be on call every other week, he was able to switch on-call shifts, subject to the agreement of his colleague. Coburn stated at deposition that the frequency of the calls could be daily in the winter but only once every couple weeks in the summer.[23] John Meisel, who shared on-call duties for a period, estimated that he responded to between 20 to 25 calls in a two-year period.[24] This frequency of calls (between once and twice a month on average) is similar to cases in which courts have found on-call time not compensable. *See, e.g.* *Ingram*, 144 F.3d at 269 (fewer than three to five per day); *Bright v. Houston Northwest Medical Center,* 934 F.2d 671, 673-74 (5th Cir. 1991) (en banc) (biomedical equipment repair technician called an average of twice per week and two to three times over the weekend, required to report within twenty minutes of being paged.) *Gilligan v. City of Emporia,* 986 F.2d 410, 412 (10th Cir.1993) (employees called less than once a day and given between thirty minutes and one hour to

---

[22] Coburn conceded at oral argument that the majority of cases examining the compensability of employees' on-call time found it not compensable under the FLSA.

[23] Coburn Dep. (doc. no. 27-14) at 92.

[24] Mem. Mot. Summ. J. (doc. no. 25-1) at 11 n. 1.

respond); *Armitage v. City of Emporia,* 982 F.2d 430, 432 (10th Cir.1992) (police detectives called on average less than twice per week, given twenty minutes to report to duty).

Coburn argues that the distinguishing issue in his case is the duration of some calls: when called away, the work could last for a few hours, or might extend into multiple days.[25] He cites no legal precedent holding that the duration of actual work time renders the non-working *on-call time itself* compensable, rather, courts have focused on the fact that the time the employee spent engaged in actual work was compensable. *See, e.g. Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 744 (6th Cir. 2000) (funeral director should be compensated for time spent answering calls, but not time spent on-call). Neither the city nor Coburn disputes that he was paid for the work he performed responding to calls. Coburn argues that the fact is salient because he was unable to engage in activities that he could not put down completely; the fact that he would be gone for a full workday after getting a call meant that he could not come back to an activity. While this is certainly more burdensome than, for example, being able to respond to a call from home in a matter of minutes, it is not more limiting than the other restrictions facing Coburn, under which he was still able to engage in activities like yard work, walking the dog, and visiting family while on call. *See, e.g. Gardner v. Cape Cod Healthcare, Inc.*, No. CV 22-10855, 2023 WL 8372994 at *1 (D. Mass. Oct. 17, 2023) (finding that open-heart surgical technician's on-call time not compensable where

---

[25] Surreply (doc. no. 30) at 2.

technicians had to remain sober and be able to return to hospital to assist in surgery within 30 minutes but could engage in other activities like playing tennis and spending time with family).

Taken together, the actual and perceived restrictions that Coburn faced were unlike those faced by employees whose on-call time was found to be compensable. He was not required to, for instance, closely monitor ongoing radio transmissions, live in a moving vehicle, or report within 20 minutes of a call. He was not required to remain prepared to engage in extremely intensive work, like fighting fires, for 24 hours at a time. Based on the undisputed facts in the record, Coburn had some freedom in determining how to use his on-call time, despite limitations. Unlike employees whose time was compensable, he could engage in activities in a relatively large geographic area, *cf.* *Montoya*, 88 F.4th at 316, calls were only frequent during certain seasons, and Coburn was able to engage in activities like walking the dog, yard work, and visiting family because he was not required to constantly monitor a phone or radio for incoming transmissions, *cf.* *Cross*, 938 F.2d at 917. That some of his personal activities may have been affected is insufficient to establish a FLSA claim. *See* *Brock*, 826 F.2d at 373-75; *see also* *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 487 (6th Cir. 2006) (holding the same); *Gardner*, 2023 WL 8372994 at *3 (same).

**b. Agreement between the parties**

The parties dispute whether a constructive agreement existed between the parties under which the city would not compensate Coburn for time spent on-call. "While the existence and terms of such an agreement are factors for the Court's consideration, they

are not controlling. It is well-settled that any custom or contract inconsistent with the FLSA is unenforceable." *Berry v. Cnty. of Sonoma*, 763 F. Supp. 1055, 1059 (N.D. Cal. 1991) (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)); *see also Owens*, 971 F.2d at 354 ("Although the existence of an agreement may not be controlling in all cases, it is usually relevant to the compensability issue." (citing *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245, 1248 (5th Cir. 1986))). Several courts have found that continuing to work under the terms of an agreement constituted acceptance of the agreement. *See Owens,* 971 F.2d at 355 ("Plaintiff mechanics in the present case may not have liked the company's formal call-in system, but by continuing to work, they constructively accepted the new terms. There is an additional inference of acceptance because Plaintiffs were employed under a collective bargaining agreement that provided overtime compensation for actual call-in work, but not for other off-duty time."); *see also Rousseau*, 805 F.2d at 1248 ("continuance of employment can be evidence of an implied agreement to the terms of that employment"); *General Electric Co. v. Porter,* 208 F.2d 805, 813 (9th Cir. 1953) (unilateral action of an employer was impliedly accepted when employees reported to work and worked pursuant to employer's new policy), *cert. denied,* 347 U.S. 951 (1954).

Coburn argues that he did not constructively agree to the new terms of his employment because he complained to his supervisor about the lack of on-call pay, and because he only maintained his employment with the city to preserve the seniority he had attained. He cites no authority for the proposition that such facts negate a constructive agreement to terms of employment. At his deposition, Coburn testified that he accepted

his position, despite lower pay than his previous employment, knowing that it would require him to respond to emergencies but would have opportunities for earning overtime pay.[26] In time, he found he had "made the right decision," but also stated that management's "attitude" toward emergency response changed.[27] The court nevertheless finds that accepting and remaining in his position, with the knowledge that it would include on-call status but provide opportunities for overtime pay, constitutes constructive agreement to the terms of his employment.

## IV. Conclusion

Because no reasonable jury could find that Coburn's on-call time was compensable under the FLSA, the defendant's motion for summary judgment[28] is **GRANTED**.

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: September 8, 2026
Cc: Counsel of record

[26] Coburn Depo (doc. no. 25-3) at 21.
[27] *Id.* at 20-21.
[28] Doc. no. 25.